■ SUSAN LEWIS et al., Appellants, v STATE OF NEW YORK, Respondent. (Claim No. 114768.) [892 NYS2d 583]—

McCarthy, J.

Claimant Susan Lewis (hereinafter claimant) and her husband, derivatively, commenced this action alleging negligence against defendant in connection with the notification process undertaken by the Department of Health (hereinafter DOH) to alert patients of Harvey Finkelstein, a physician, to the possibility that they may have contracted a blood-borne disease as a result of Finkelstein's improper reuse of syringes. Claimant alleged that she was a patient of Finkelstein's pain-management practice between 2002 and 2004, that DOH failed to notify her when it discovered and investigated Finkelstein's improper practices in late 2004, and that she learned of the danger only when it was reported in the media three years later, whereupon testing confirmed that she had contracted hepatitis C. Claimant faults DOH for its failure to undertake a more comprehensive and timely notification process. The Court of Claims granted defendant's motion to dismiss the claim on the basis of

governmental immunity. The court also rejected claimant's argument that she was entitled to discovery before the court rendered a determination on the motion to dismiss. For the reasons stated below, we affirm.

"Governmental immunity under the decisional law of this [s]tate does not attach to every act, but when official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial, a municipal defendant generally is not answerable in damages for the injurious consequences of that action" (*Haddock v City of New York*, 75 NY2d 478, 484 [1990] [citations omitted]; *accord Doe v State of New York*, 267 AD2d 913, 915 [1999], *lv denied* 95 NY2d 759 [2000]). "While the line separating discretionary and ministerial action may sometimes blur, it is clear that 'discretionary or quasi-judicial acts involve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result' " (*Haddock v City of New York*, 75 NY2d at 484, quoting *Tango v Tulevech*, 61 NY2d 34, 41 [1983]).

The Court of Appeals has recently clarified the application of governmental immunity, confirming that "[g]overnment action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general" (*McLean v City of New York*, 12 NY3d 194, 203 [2009]). Claimant argued that allegations of a special duty were unnecessary. Her position is untenable in light of the Court of Appeals' decision in *McLean*. In any event, a review of her submissions for any reasonable inference that a special relationship has been alleged (*see Bell v Village of Stamford*, 51 AD3d 1263, 1264 [2008]; *see also Stata v Village of Waterford*, 225 AD2d 163, 167-168 [1996]) reveals none.

" 'A special relationship can be formed in three ways: (1) when the [government] violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the [government] assumes positive direction and control in the face of a known, blatant and dangerous safety violation' " (*McLean v City of New York*, 12 NY3d at 199, quoting *Pelaez v Seide*, 2 NY3d 186, 199-200 [2004]; *see Garrett v Holiday Inns*, 58 NY2d 253, 261-262 [1983]). Claimant's references to the Public Health Law (*see* Public Health Law § 201 [1] [c]; § 206 [1] [a], [b], [e]; [4] [a]; §§ 2100, 2170) do not identify the breach of any statutory duty

enacted for the benefit of "a particular class of persons" to which claimant belongs and from which a private right of action may be inferred (*see McLean v City of New York*, 12 NY3d at 200; *Pelaez v Seide*, 2 NY3d at 200-201). Nor does claimant allege that DOH engaged in direct contact with her and affirmatively undertook a duty to act on her behalf and that she justifiably relied upon that undertaking (*see McLean v City of New York*, 12 NY3d at 201; *Pelaez v Seide*, 2 NY3d at 202). Finally, although claimant did allege that DOH investigated Finkelstein and sent notices to some of his patients advising them of the possibility that they had contracted hepatitis C, issuance of health advisories does not equate with assuming positive direction and control in the face of a known, blatant and dangerous safety violation (*see Pelaez v Seide*, 2 NY3d at 203-204). Consequently, the failure to allege the breach of a special duty was fatal to claimant's cause of action and her claim was properly dismissed (*see McLean v City of New York*, 12 NY3d at 203; *Lauer v City of New York*, 95 NY2d 95, 100-101 [2000]).

Even if claimant had properly alleged a special duty, DOH's conduct still would not have given rise to liability. Claimant contends that DOH's drawn-out notification process was either a failure to exercise any discretion or reasoned judgment when called upon to do so, or the negligent performance of a ministerial act. Media reports attached to claimant's opposition papers noted that public officials had acknowledged a failure to properly prioritize the notification process. However, the setting of priorities and the allocation of agency resources are inherently exercises of discretion (*see Matter of Abrams v New York City Tr. Auth.*, 39 NY2d 990, 992 [1976]; *Matter of Scoralick v Milonas*, 207 AD2d 159, 161 [1995], *appeal dismissed* 85 NY2d 967 [1995], *lv denied* 86 NY2d 707 [1995]). Moreover, the same evidence indicates that DOH made affirmative decisions regarding the scope and timing of notifications, and that it actively considered whether or not to subpoena Finkelstein's records. Such evidence wholly undermines claimant's argument that DOH failed to exercise any discretion. While DOH's response to this situation has been roundly criticized and acknowledged as inadequate, "it is not for the courts to second-guess the wisdom of discretionary governmental choices, troubling though they may sometimes seem in the glaring clarity of hindsight" (*Haddock v City of New York*, 75 NY2d at 486).

Equally unavailing is claimant's reliance on the sections of the Public Health Law previously cited herein as the source of a nondiscretionary, ministerial obligation to issue notices to all of Finkelstein's patients in a more timely manner. Our review of

those provisions fails to disclose that any particular result was compelled by the exercise of authority delegated therein (*see Haddock v City of New York*, 75 NY2d at 484; *Tango v Tulevech*, 61 NY2d at 41).

Claimant's argument that DOH's conduct in notifying Finkelstein's patients of their potential health risk constituted a proprietary rather than a governmental function warrants little discussion. It is well settled that "[p]ublic duties properly styled governmental in character include . . . the protection of health" (*Augustine v Town of Brant*, 249 NY 198, 204 [1928]). "Providing advice on health and hygiene issues is a governmental activity" (*Pelaez v Seide*, 2 NY3d at 203).

Finally, we have reviewed claimant's discovery demands. We agree with the Court of Claims that the information claimant sought was not material to its determination of the issue of governmental immunity and no amount of discovery could salvage the claim (*see Herzog v Town of Thompson*, 216 AD2d 801, 802-803 [1995]; *Hoheb v Pathology Assoc. of Albany*, 146 AD2d 919, 921 [1989]).

Peters, J.P., Rose, Kane and Kavanagh, JJ., concur. Ordered that the order is affirmed, without costs.